FILED

2020 FEB 25 PM 1: 31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY

Manuel Ira Blanco, Jr.
24369 Sunnymead Boulevard
Moreno Valley, California 92553
(951) 315-1312

Defendant in Pro Per

# UNITED STATES DISCTRIC COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br>Plaintiff,<br><br>vs.<br><br>MANUEL IRA BLANCO, JR.;<br>MARIA CARMEN HIGAREDA; DOES 1-10,<br>Defendant(s) | Case No.: 5:18-cv-00963-SJO-KK<br><br>[Judge: Hon. S. James Otero]<br><br>**DEFENDANT MANUEL IRA BLANCO JR.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSSMOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: March 16, 2020<br>Hearing Time 10:00 a.m.<br>Dept: 10 C |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This Motion is being made on behalf of Manuel Blanco, Jr. ("Blanco").

On May 5, 2018, plaintiff Samuel Love, ("Plaintiff"), filed the instant action against Blanco, in relation to the real property located at 24369 Sunnymead Boulevard, Moreno Valley, California (the " Subject Property"), asserting claims for Complaint for Damages and Injunctive Relief for Violations of American's with Disabilities Act; Unruh Civil Rights Act.

In February of 2018, Plaintiff, a paraplegic, presented to the Subject Property which is owned by Blanco, to visit the business known as Glamour Salon (the "Salon") which is owned and operated by co-defendant Maria Higareda ("Higareda") to get his hair cut. Plaintiff contends that on same date, his ADA Rights were violated because, allegedly, none of the parking spaces on the Subject Property were marked and reserved for persons with disabilities

Plaintiff alleges that he went to the Salon in February of 2018 to get a haircut. Plaintiff claims he encountered a barrier on account of his disability and filed this lawsuit. However, Plaintiff admits that he parked his vehicle on the subject property, but never entered the salon.

## II.

## STATEMENT OF FACTS

Plaintiff has yet to state the exact date he presented to the subject property. He filed suit against Blanco for allegedly failing to provide designated parking space to persons with disabilities. In his complaint, Plaintiff admits that he presented to Glamour Salon for the purpose of getting his hair cut. He contends that in the course of visiting the Subject Property he was deprived of his ADA rights because Blanco failed to provide a designated parking space for persons with disabilities, like him, and was therefore damaged.

1

2      From the inception of this case, Plaintiff has always contended that the Subject

3  Property had in place designated parking space to persons with disabilities.

4

5      On same unknown date, Plaintiff agrees that even though allegedly, there was not

6  one parking space designated for persons with disabilities, he was still able to enter the

7  Glamour Salon to get his hair cut. He was still able to approach the Glamour Salon,

8  open the door and enter the establishment for purposes of getting his hair cut. In other

9  words, Plaintiff's contention that the lack of designated parking spaces for persons with

10  disabilities specifically prevented him from enjoying the same benefits as able-body

11  customers has no merit because he repeatedly admits in the Complaint that he was able

12  to enter the Glamour Salon on the date of the subject incident. There was and has never

13  been a barrier on the Subject Property which prevented Plaintiff from enjoying the enjoy

14  the same benefits as able-body customers at the Subject Property and from entering the

15  Glamour Salon.

16      Blanco contends the Subject Property has always had in place a parking space for

17  persons with disabilities and therefore all disabled customers are treated  no differently

18  than the able bodied. There is no injury-in-fact to be had, nor redress. Plaintiff asserts

19  he intends to return to "patronize" the Subject Property and the Glamour Salon but

20  remains deterred. Plaintiff lives in Beaumont. The Subject Property is over 40 miles

21  from his residence. His assertion is inconsistent with his deposition testimony in other

22  cases which he testified that he regularly patronized a hair salon, located a few miles

23  from his house, and was satisfied with the service they had previously performed.

24      The uncontroverted facts are this: (1) The alleged unavailability of an accessible

25  parking did not deter nor impede Plaintiff from fulfilling the objective of his visit to the

26  Subject Property, which was to enter the premises of the Glamour Salon and  get his

27  hair cut. (2) Plaintiff is not deterred from availing himself of the services of the

28  Glamour Salon because at all times relevant to this matter, there has always been a

1  designated parking space for persons with disabilities, including but not limited to

2  Plaintiff. (3) Plaintiff is still unable to explain how the alleged absence of an accessible

3  parking space could have denied him a haircut any differently from one obtained by an

4  able-bodied customer; Plaintiff admits having entered the establishment of the Glamour

5  Salon.

## III.

## LEGAL ARGUMENT

### A.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FAILS AS MATTER OF LAW

Summary judgment is proper only where the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c ); see also, *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson* v. *Liberty Lobby,* lo *Inc.* 477 U.S. 242, 256 (1986). If a fact may affect the outcome of a claim, it is material. *Id.* at 248. Moreover, the Court construes all evidence and reasonable inferences drawn therefrom in favor of the non-moving party, in this case Blanco. *Anderson* 477 U.S.at 255.

"[F]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt* v. *County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *United States* v. *Hays*, 515 U.S. 737, 742, (1995). The existence of Article III standing is not subject to waiver. *Hays, 515 U.S., at* 742. It must be demonstrated "at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475

4

1 U.S. 534, 541(1986).

2     To invoke the jurisdiction of the federal courts, a disabled individual claiming
3 discrimination "must demonstrate that he has suffered an injury-in-fact, that the injury
4 is traceable to the Store's actions, and that the injury can be redressed by a favorable
5 decision... In addition, to establish standing to pursue injunctive relief, which is the only
6 relief available to private plaintiffs under the ADA, he must demonstrate a "real and
7 immediate threat of repeated injury" in the future. Chapman, 946.

8     In this instance, Plaintiff has failed to produce any evidence which demonstrates
9 a real and immediate threat of repeated injury against any of the named defendants. In
10 particular, Blanco. Plaintiff will continue to fail to produce such evidence because such
11 factual evidence does not exist.

12     Plaintiff produces photographs which were taken months after the alleged
13 incident occurred. Further, such photographs are from Plaintiff's investigator who is not
14 certified by the ADA nor any formal government agency. In other words, Plaintiff's
15 investigator is not qualified as an expert, therefore his opinion is limited to that of a lay
16 person and therefore holds no merit for this court to distinguish whether Plaintiff's
17 allegation that his ADA Rights were violated by Blanco because Plaintiff has failed to
18 produce factual evidence supported by authorities in the industry.

19   **1)   Absence of Injury-In-Fact**

20     Plaintiff failed to allege facts demonstrating the existence of an injury in-fact.

21     "To establish injury in fact, a plaintiff must show that he or she suffered 'an
22 invasion of a legally protected interest' that is 'concrete and particularized' and 'actual
23 or imminent, not conjectural or hypothetical.'" *Lujan, 504 U.S. at* 560. To that end, "[a]
24 'concrete' injury must be 'de facto'; that is, it must actually exist." "Where, as here, a
25 case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating"
26 the existence of an injury in fact. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

27     Here, although Plaintiff alleges he is physically disabled, and that he visited the
28 Subject Property and encountered architectural barriers that denied him full and equal

access, he <u>does not allege how his disability relates to the barriers so as to deny him the</u> <u>"full and equal" access that would satisfy the injury- in-fact requirement</u>.

In other words, the Complaint does not connect the alleged violations to Plaintiff's disability or indicate how he encountered any one of them in such a way as to impair his full and equal enjoyment of getting his hair cut at the Glamour Salon. Plaintiff fails to state how the alleged absence of a designated parking space prevented him from entering the establishment of the Glamour Salon. To the contrary, Plaintiff admits that he indeed entered the establishment of the Glamour Salon and attempted to get haircut. Then, in contradiction, a few paragraphs into the complaint, Plaintiff contends that he never encountered the barriers.

In 2011, an en banc panel met in *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 955 (9th. Cir. 2011) (en banc) to resolve intra-circuit conflicts on issues pertinent to the private enforcement of the ADA. The decision established the pleading standards as they apply to litigation under the ADA. *Chapman* is the only ADA-related en banc decision in the Ninth Circuit of which this attorney is aware. It is not often that the Ninth Circuit chooses to meet en banc. Rather, this rare event happens about twenty times a year out of nearly eleven thousand cases brought before the Court annually. The Ninth Circuit noted its purpose in analyzing *Chapman* en banc: "We vacated the panel's decision after a majority of our court's non-recused active judges voted to rehear the appeal en banc to examine the Article III standing doctrine in the context of actions for injunctive relief under the ADA." *Chapman*, 631 F.3d at 944.

Among the issues the Court addressed was whether Chapman had sufficiently pleaded injury-in-fact to have Article III standing under the case or controversy principles established by the Supreme Court. *Chapman*, 631F.3d at 954-55. In so doing, the *Chapman* court analyzed the established injury-in-fact requirements, set out by the Supreme Court in *Lujan*, as they had been applied to ADA cases.

The en banc panel in *Chapman* concluded that both the District Court, and the three-judge panel of the Ninth Circuit had missed the fact that the complaint was

jurisdictionally defective on the grounds that none of the barriers alleged in the complaint were described to permit either the parties or the courts to understand *how* Chapman was personally affected by the barriers, how they related to his specific disability, or if they related to his disability at all. Further, the list of purported barriers did not indicate whether or how each deterred Chapman from returning to Pier 1.

As a consequence, the *Chapman* court determined, the plaintiff failed to properly aver injury-in-fact or imminent harm, and thus "the district court should have dismissed" the ADA claims. *Id.* at 955.

While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, "a liberal interpretation of a . . . civil rights complaint may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Chapman's complaint fails to sufficiently allege the essential elements of Article III standing. Although Chapman alleges that he is "physically disabled," and that he "visited the Store" and "encountered architectural barriers that denied him full and equal access," he never alleges what those barriers were and *how his disability was affected by them so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement* (i.e., that he personally suffered discrimination under the ADA on account of his disability). (emphasis added). (*Id.* 954) Chapman's complaint was dismissed for lack of specificity.

The complaint filed by Plaintiff, here, is devoid of any explanation as to *how* the alleged barriers denied him full and equal access to the Glamour Salon and to getting his hair cut. Further, to underscore Plaintiff's failure to establish an Injury-in-Fact.

The central question is *how*: how was plaintiff's disability affected by the alleged barriers so as to deny him full and equal access? The complaint is entirely silent as to whether Plaintiff was unable to obtain his hair cut once he entered the establishment of the Glamour Salon as a result of the alleged lack of parking space designated for persons with disabilities. The complaint is confusing in terms of whether Plaintiff has ever

7

1  entered the Salon.

2      A plaintiff must aver that he suffered an injury-in-fact that is concrete,
3  particularized, and actual. Plaintiff here alleges that he is physically disabled, and that
4  he visited the Subject Property and encountered architectural barriers that denied him
5  full and equal access, yet he does not allege *how* his disability relates to the alleged
6  barriers so as to deny him the "full and equal" access. In other words, the Complaint
7  does not connect the alleged violations to Plaintiff's disability, nor indicate how he
8  encountered any one of them in such a way as to impair his full and equal enjoyment of
9  getting his hair cut. Just as importantly, he does not allege whether he actually
10 experience difficulty and how. To the contrary, Plaintiff admits that he entered the
11 establishment of the Glamour Salon, which is what the objective of his visit to the
12 Subject Property is all about; his intention was to allegedly enter the Glamour Salon
13 and get his hair cut.

14     Plaintiff pleaded no clearer than Chapman did 15 years ago. Plaintiff's
15 conclusory allegations of injury do not support a finding of actual injury. *Lujan*, 504
16 U.S. at 564.

17     In determining whether the facts support the conclusion that there was a barrier,
18 the court should look to the quality of the evidence. **"The focus is on the quality,**
19 **rather than the quantity, of the evidence** .... Inferences may constitute substantial
20 evidence, but **they must be the product of logic and reason. Speculation or**
21 **conjecture alone is not substantial evidence.** [Citations.] Expert opinion testimony
22 constitutes substantial evidence only if based on conclusions or assumptions supported
23 by evidence in the record. Opinion testimony which is conjectural or speculative 'cannot
24 rise to the dignity of substantial evidence.' *"Roddenberry v. Roddenberry* (1 996) 44
25 Cal.App.4th 634, 651.

26     Here plaintiff has submitted as evidence photographs of the parking lot of the
27 Subject Property, which were (1) not taken on the date of the alleged incident; (2) taken
28 by non-qualified or certified Expert; (3) the photographs were taken months after the

1  alleged occurrence of the Incident.

2      **2)**    **Absence of Imminent Harm**

3      A plaintiff seeking injunctive relief must additionally demonstrate a sufficient

4  likelihood that he will again be wronged in a similar way ... he must establish a "real

5  and immediate threat of repeated injury. *Chapman*, 948.

6      A plaintiff's intent to return must be sincere. *Doran v. 7-Eleven, Inc.*, 524 F.3d

7  1034, 1041 (9th. Cir. 2008) (Evidence of past patronage of the business, location within

8  a reasonable distance from Plaintiff's residence and along a familiar bus route, plus a

9  sincere intent to return could demonstrate an "actual or imminent" injury.) *Parr v. L &*

10  *L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079. (D. Haw. 2000). *D'Lil v. Best W.*

11  *Encina Lodge & Suites*, 538 F.3d 1031 is instructive.

12      The plaintiff in *D'Lil*, a paraplegic, traveled to Santa Barbara on a work trip. Id.

13  At 1034. After encountering access barriers during her stay at the Best Western Encina,

14  she brought suit against the hotel. She "gave detailed reasons as to why she would prefer

15  to stay at the Best Western Encina during her regular visits to Santa Barbara." *Id.* at

16  1039. Her intent to return to the Santa Barbara area was evidenced by the regularity

17  with which she visited the city before, during, and after her stay at the Best Western

18  Encinata. By her declaration, and her testimony at the evidentiary hearing, *D'Lil*

19  demonstrated that *she has been visiting the Santa Barbara area since the early 1980s*

20  *for both business and pleasure.* From 1993 to 2000, she had visited approximately 1 -3

21  times per year.

22      Here, there is no explanation as to the location at which Plaintiff resides, his

23  distance from the Subject Property, the number of times Plaintiff has previously

24  patronized the Subject Property and/or the Salon, Plaintiff's relationship to the

25  geographic area, and whether he has specific plans to return to the Subject Property, as

26  opposed to "someday." Similarly, there is no indication as to which barrier(s) deter him

27  from revisiting the Subject Property or the Salon, and why he would want to revisit this

28  particular business given there are others, providing the same goods or services, in the

1  area closer to his residence. In other words, Plaintiff has not averred a credible and/or
2  plausible plan to return.

3      Plaintiff is unable to show why he is likely to patronize the Subject Property or
4  the Glamour Salon in the future. Plaintiff's assertion that he intends to return to
5  "patronize" the Subject Property is inconsistent with his prior deposition testimony in
6  other cases. Plaintiff has traditionally cut his hair near his residence by a service
7  provider whose services he finds to be competent and desirable. Plaintiff's vague
8  intentions do not support a finding of actual or imminent injury. *Lujan*, 504 U.S. at 564.

9      Finally, Plaintiff misrepresents the purpose of his visit. An ADA plaintiff seeking
10 injunctive relief must show either an intent to return or deterrence from doing so to
11 establish standing. Plaintiff here fails to show either. He contends that his intention was
12 to get his hair cut, yet he admits that he never entered the Salon because there were
13 allegedly no parking facilities designed to accommodate persons with disabilities.

14     Given Plaintiff's own admissions, he lacks standing to assert the ADA claim.
15 The Court should dismiss them under Fed. R. Civ. P. 12(b)(1).

16 **B.   SUBSTANTIAL MATERIAL FACTS IN DISPUTE PRECLUDE**
17 **SUMMARY JUDGMENT**

18     Summary Judgement is also inappropriate because there are material facts in
19 dispute. First, some of the "stipulated facts" upon which Plaintiff base their Motion are
20 in dispute. Second, because some of the "stipulated facts" do not apply to this defendant.

21 **1)   Plaintiff's Material Facts in Dispute Regarding Counter**

22     Rule 56 of the federal Rules of Civil Procedure provides that a party may move
23 for summary judgment on a claim or defense - or part of a claim or defense - where "the
24 movant shows that there is no genuine dispute as to any material fact and the movant is
25 entitled to judgment as a matter of law." Here, Plaintiff fails. Plaintiff has produced a
26 photograph and a report that does not show the current state of the parking structure,
27 which would reflect that the Parking Structure is Code complaint.  It appears Plaintiff
28 is attempting to hide the fact from the Court.

**2)   Blanco has Produced Substantial Evidence of the Parking Structure**

Plaintiff has been provided with evidence that the parking structure is marked pursuant to Code and ADA regulations.

**C.   DEFENDANT BLANCO'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Blanco requests summary judgment that the arguments listed above in section III is found to be in favor of defendant and that defendant at all times was in compliance with safety and federal ADA laws. Because Defendant Blanco was in compliance, Defendant Blanco should be granted summary judgment.

**IV.**

**CONCLUSION**

For all the foregoing reasons, -Defendant Blanco requests that this Court deny Plaintiff's Motion for Summary Judgment. Defendant Blanco requests that this Court Grant Defendant Blanco' s motion for summary judgment.

Date: February 23, 2020

Manuel Ira Blanco, Jr.
Defendant in Pro Per

BLANCO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SUMMARYJUDGMENT

# EXHIBIT A

# EXHIBIT A





# PROOF OF SERVICE

I am employed in the County of Riverside, State of California. I am over the age of 18 and not a party to the within action; my business address is

On February 25, 2020, I served the foregoing document(s) described as: **DEFENDANT MANUEL IRA BLANCO JR.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSSMOTION FOR SUMMARY JUDGMENT,** on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

☒ **BY MAIL** (C.C.P. §§ 1013a, *et seq.*): I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **ELECTRONIC MAIL SERVICE:** I served the above documents by electronic mail in the United States during normal business hours by causing the within document to be transmitted to the attorneys of record for the parties herein at the email address(es) of said attorney(s) as indicated above. The electronic service was in compliance with CRC Rule 2.251 and the transmission was reported as complete and without error. I am readily familiar with Veatch Carlson, LLP business practices for electronic service.

☐ **BY REGISTERED MAIL** (C.C.P. §§ 1020, *et seq.*): I caused said document(s) to be deposited with the United States Mail, postage prepaid, return receipt requested, signed by the addressee that said documents were received.

☐ **FEDERAL:** I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 25, at Los Angeles, California.

_____          _____
Type or Print Name                                           Signature

---

12