UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Priority    ___
Send        ___
Enter       ___
Closed      ___
JS-5/JS-6   ___
Scan Only   ___

**CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u>　　　　　　　　**DATE:** <u>March 20, 2020</u>

**TITLE:**　　<u>Samuel Love v. Manuel Ira Blanco, Jr. et al.</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz　　　　　　　　　　　　　Not Present
Courtroom Clerk　　　　　　　　　　　　　Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**　　**COUNSEL PRESENT FOR DEFENDANTS:**
Not Present　　　　　　　　　　　　　　Not Present
========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 86]**, DENYING DEFENDANT MARIA HIGAREDA'S CROSS-MOTION FOR SUMMARY JUDGMENT** [Docket No. 89]**, AND DENYING DEFENDANT MANUEL BLANCO'S CROSS-MOTION FOR SUMMARY JUDGMENT** [Docket No. 92]

This matter is before the Court on Plaintiff Samuel Love's ("Plaintiff" or "Love") Motion for Summary Judgment ("Plaintiff's MSJ"), filed on February 11, 2020 (ECF No. 86).  Defendant Maria Higareda ("Higareda") filed an Opposition and Cross-Motion for Summary Judgment ("Higareda Motion") on February 21, 2020.  (ECF No. 89.)  Defendant Manuel Ira Blanco, Jr. filed an Opposition and Cross-Motion for Summary Judgment ("Blanco Motion") on February 25, 2020.  (ECF No. 92.)  Plaintiff filed a consolidated Reply ("Reply") to Higareda and Blanco's (collectively, "Defendants") Motions on March 2, 2020.  (ECF No. 95.)

The Court found these matters suitable for disposition without oral argument and vacated the hearing set for March 16, 2020.  *See* Fed. R. Civ. P. 78(b).  For the reasons stated below, the Court **DENIES** Plaintiff's Motion for Summary Judgment, **DENIES** Higareda's Cross-Motion for Summary Judgment, and **DENIES** Blanco's Cross-Motion for Summary Judgment.

I.　　<u>BACKGROUND</u>

Plaintiff initiated the instant action against Defendants on May 5, 2018, by filing a Complaint seeking damages and injunctive relief for alleged violations of the Americans with Disabilities Act ("ADA") and Unruh Civil Rights Act ("Unruh Act").  (*See generally* Compl., ECF No. 1.)

Plaintiff alleges the following.  Plaintiff is a quadriplegic who uses a wheelchair for mobility.  (Compl. ¶ 1.)  Higareda operates the Royal Glamour Beauty Salon located at or about 24369

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u> | **DATE:** <u>March 20, 2020</u> |

Sunnymead Blvd., Moreno Valley, CA ("the Salon").  (*Id.* ¶ 4.)  The Salon is located on real property owned by Blanco.  (*Id.* ¶ 3.)

In February 2018, Plaintiff visited the Salon to get a haircut and to assess the Salon for compliance with access laws.  (*Id.* ¶ 10; Plaintiff's MSJ, Statement of Uncontroverted Facts and Conclusions of Law ("PSUF"), No. 6, ECF No. 86-2.)  During this visit, Plaintiff encountered two alleged barriers to access.

First, Plaintiff alleges that although the Salon had approximately eleven off-street parking spaces, the Salon did not have any parking spaces that were marked and reserved for persons with disabilities. (Compl. ¶¶ 12–19; PSUF No. 13.)  Because parking in a non-accessible spot would have been both inconvenient and potentially dangerous for him, Plaintiff chose to leave without further trying to patronize the Salon.  (PSUF No. 11.)  He alleges this constituted a denial of his full and equal access to the Salon.  (Compl. ¶ 19.)

Second, Plaintiff alleges the Salon's transaction counter was 42 inches high, and that it lacked a lowered, 36-inch portion of the counter for use by persons in wheelchairs as required by the ADA (42 U.S.C. § 904.4, § 904.1).  (*Id.* ¶¶ 21–22.)  Plaintiff did not experience this personally, as he never entered the Salon in February 2018.  (PSUF No. 12.)  Rather, he determined this based on a report by Evens Louis ("Louis"), his investigator, who visited the Salon and measured the height of the counters on May 1, 2018.  (*Id.*)

Based on these allegations, Plaintiff brings two causes of action: an ADA claim arising out of the discrimination he suffered from the absence of accessible parking spaces and the counter height at the Salon, and a California Unruh Civil Rights Act ("Unruh Act") claim incorporating the same facts and pleadings as the ADA claim.  (Compl. ¶¶ 30–42.)  Plaintiff seeks three forms of relief: (1) injunctive relief, compelling Defendants to comply with the ADA and Unruh Act; (2) actual damages (and a statutory minimum of $4,000) under the Unruh Act; and (3) attorney's fees, litigation expenses, and costs.  (*Id.* at 8, Prayer, ¶¶ 1–3.)

After many months of motion practice involving a motion to dismiss, a motion to declare Plaintiff a vexatious litigant, two default judgments that were later set aside, and an unsuccessful attempt at mediation, Plaintiff filed the instant Motion for Summary Judgment, and both Defendants filed the instant Cross-Motions for Summary Judgment.

///

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>5:18-cv-00963 SJO (KKx)</u>                              DATE: <u>March 20, 2020</u>

II.  <u>LEGAL STANDARDS</u>

    A.  <u>Summary Judgment</u>

Summary judgment is appropriate when based on the pleadings, affidavits, and other supporting papers, the court determines that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 2242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A "genuine" dispute is one that is supported by evidence sufficient to permit a reasonable jury to find in favor of the nonmoving party. *Anderson*, 477 U.S. at 247–48.  The substantive law underlying the claims and defenses at issue will determine which facts are "material."  *Id.* at 248.

In resolving summary judgment disputes, a court's function is not to determine "the truth of the matter" by conducting a "trial on affidavits."  *Id.* at 249, 255.  Instead, the court's role is to decide "whether the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* at 251–52.  Accordingly, the nonmovant's evidence is to be believed and all justifiable inferences are to be made in the nonmovant's favor, leaving "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" to the jury.  *Id.* at 255; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If, remaining mindful of the substantive evidentiary standards that apply to the case, the court finds that a reasonable jury could determine "**either** that the plaintiff proved his case . . . **or** that he did not," then it should deny summary judgment.  *Anderson*, 477 U.S. at 254 (emphasis in original).

    B.  <u>The ADA and Title III Claims</u>

Title III of the ADA prohibits discrimination on the basis of disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" with a nexus in interstate commerce.  42 U.S.C. §§ 2000a(b), 12182(a).  Compliance with the ADA requires that new facilities be "readily accessible to and usable by individuals with disabilities" unless that would be "structurally impracticable" to ensure.  42 U.S.C. § 12183(a)(1).  As for existing facilities, the "failure to remove architectural barriers . . . where such removal is readily achievable" constitutes discrimination under the ADA.  42 U.S.C. § 12182(b)(2)(A)(iv).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

**CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u>　　　　　　　　**DATE:** <u>March 20, 2020</u>

The elements of a Title III ADA discrimination claim are: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of the plaintiff's disability.  42 U.S.C. §§ 12182(a)–(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

　　C.　<u>ADA Standards for Accessible Parking Spaces</u>

The ADA Standards for Accessible Design ("ADA Standards"), comprised of both the 1991 Standards and the 2020 Standards, establish the relevant accessibility standards for evaluating whether a defendant has complied with the ADA.  42 U.S.C. §§ 12183, 12186; 28 C.F.R. §§ 36.1002, 36.304(d).

Section 208 of the ADA Standards requires that any businesses providing parking spaces must provide a sufficient number of handicap-accessible parking spaces.  2010 Standards, 36 C.F.R. § 1191, App. B., § 208.1.  The total number of required accessible spaces depends on the total number of parking spaces available—when a parking lot has 1–25 spaces, it must have at least 1 van-accessible space.  *Id.* § 208.2, Table 208.2.

Section 502 of the ADA Standards establishes the technical requirements for accessible parking spaces.  The relevant sub-sections provide that:

> **502.1 General.** Car and van parking spaces shall comply with 502. Where parking spaces are marked with lines, width measurements of parking spaces and access aisles shall be made from the centerline of the markings.
>
> **502.2 Vehicle Spaces.** Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.
>
> **502.3 Access Aisle.** Access aisles serving parking spaces shall comply with 502.3. Access aisles shall adjoin an accessible route. Two parking spaces shall be permitted to share a common access aisle.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| CASE NO.:  <u>5:18-cv-00963 SJO (KKx)</u> | DATE:  <u>March 20, 2020</u> |

> **502.3.1 Width.** Access aisles serving car and van parking spaces shall be 60 inches (1525 mm) wide minimum.
>
> **502.3.2 Length.** Access aisles shall extend the full length of the parking spaces they serve.
>
> **502.3.3 Marking.** Access aisles shall be marked so as to discourage parking in them.

2010 Standards, 36 C.F.R. § 1191, App. D., § 502.1–502.3.

      D.    <u>Accessible Service and Sales Counters</u>

Section 227.1 of Chapter 2 of the ADA Standards requires that "[w]here provided, check-out aisles, sales counters, service counters, food service lines, queues, and waiting lines shall comply with 227 and 904."  2010 Standards, 36 C.F.R. § 1191, App. C, § 227.1.  Similarly, Section 227.3 requires that "[w]here provided, at least one of each type of sales counter and service counter shall comply with 904.1."  *Id.* § 227.3.

Section 904.4.1 of the ADA Standards establishes the technical requirements for sales and service counters that are designed to accommodate a parallel approach by a person in a wheelchair.  It provides:

> **Parallel Approach.**  A portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided.  A clear floor or ground space complying with 305 shall be positions for a parallel approach adjacent to the 36 inch (915 mm) minimum length of counter.

2010 Standards, 36 C.F.R. § 1191, App. D, § 904.4.1.

III.    <u>ADA CLAIM</u>

Plaintiff argues he is entitled to summary judgment on the ADA claim because his civil rights were violated when Defendants failed to provide accessible parking spaces and accessible counters at the Salon.  (Plaintiff's MSJ 6.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u> | **DATE:** <u>March 20, 2020</u> |

For the reasons below, the Court finds that: (1) Plaintiff has standing to bring this ADA claim against both Defendants; (2) there is a genuine dispute of material fact as to Plaintiff's parking space claim as the claim may be moot; and (3) there is a genuine dispute of material fact regarding the presence or absence of an ADA-compliant counter in the Salon. As such, none of the parties are entitled to summary judgment at this stage.

    A.    <u>Standing</u>

As a threshold matter, both Defendants have challenged Plaintiff's standing to sue. First, Blanco argues that the entire ADA claim fails as a matter of law because Plaintiff's Complaint does not sufficiently allege injury-in-fact, a causal connection between the alleged barriers and his disability, or that a favorable judgment would redress any actual or imminent harm. (Blanco Mot. 5–7.) Second, Higareda argues that Plaintiff's parking space claim fails as a matter of law against her because she is merely a tenant on the property, not an owner, and therefore cannot be held liable for ADA violations in common spaces—here, the parking lot. (Higareda Mot. 6–8). The Court addresses each issue in turn.

        1.    <u>Standing to Sue Blanco</u>

"[A]s with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted). "In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Id.* (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

To have standing, a plaintiff must establish three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.:  **5:18-cv-00963 SJO (KKx)**                                   DATE:  **March 20, 2020**

favorable decision.'"  *Id.* at 561 (citation omitted).  The burden falls on the plaintiff to show that it has met all three requirements.  *Id.*

Federal courts are "to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (internal quotations omitted); *see also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); 42 U.S.C. § 12188(a) (providing private right of action for injunctive relief against public accommodations that violate the ADA).  Accordingly, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . ."  *Doran*, 524 F.3d at 1042 n.5.

Here, Plaintiff satisfies the elements of standing.  This is notwithstanding Blanco's renewed argument that if Plaintiff never actually attempted to park at the Salon or enter the Salon— which appears to have been the case, according to Plaintiff's version of events—he could not have established injury-in-fact because he would have "never encountered the barriers." (Blanco Mot. 5–7).  Blanco's argument is unpersuasive because if the Salon lacked a handicap-accessible parking space, that itself would constitute a barrier to access, because it would have made it impossible (or at least, unsafe) for Plaintiff to park at the Salon lot— *regardless* of whether Plaintiff entered the business afterward.  Therefore, Plaintiff has sufficiently alleged injury-in-fact sufficient for standing.

As for the other two elements of standing, Plaintiff alleges that he encountered two barriers: lack of accessible parking spaces and lack of an accessible counter for patrons in wheelchairs, on Blanco's property.  (*See generally* Compl.)  If taken as true, these allegations are sufficient to demonstrate that the two remaining elements of standing: if Defendant owns the Property where the alleged barriers are located, that ownership demonstrates a causal connection between Defendant and the harm suffered by Plaintiff; and, should Plaintiff prevail at trial, Defendant will be required to provide handicap spaces and lower the transaction counter pursuant to ADA standards.  Such modifications will allow Plaintiff to revisit the Property comfortably.  Therefore, it is likely and not merely speculative that Plaintiff's injury will be redressed by a favorable decision.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>5:18-cv-00963 SJO (KKx)</u>                              DATE: <u>March 20, 2020</u>

Of note is Blanco's challenge to Plaintiff's ability to show a "real and immediate threat of repeated injury" as required of plaintiffs seeking injunctive relief. *Chapman*, 631 F.3d at 946. Blanco argues that Plaintiff has "not averred a credible and/or plausible plan to return," both because of the alleged distance from his place of residence to the Salon and because Plaintiff only ever visited the Salon in order to test it for ADA compliance. (Blanco Mot. 10.) However, Blanco is mistaken.

First, "an ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation" or "when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Chapman*, 631 F.3d at 950. Here, Plaintiff has asserted that, due to his experience encountering the alleged lack of accessible parking, he is "currently deterred from visiting the Salon" but intends to return "once it has been represented to [him] that the barriers have been allegedly removed . . . ." (Plaintiff's MSJ, Ex. 2, Decl. of Samuel Love in Supp. of Plaintiff's MSJ ("Love Decl.") ¶¶ 9, 12, ECF No. 86-5.) That is enough for standing purposes in ADA cases. *See Chapman*, 631 F.3d at 949–50.

Second, admissibility questions aside, Blanco's argument about the distance between the Salon and Plaintiff's home is unpersuasive. The Ninth Circuit has found "actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008). Again, Plaintiff has demonstrated such intent here. (See Love Decl. ¶ 12 ("[O]nce it has been represented to me that the barriers have been allegedly removed, I also intend to return to the Salon . . . .").)

Accordingly, Plaintiff has standing to sue Defendants.

   2.  <u>Standing to Sue Higareda</u>

Higareda raises a discrete standing challenge as to the parking space claim and as to herself only. Here, citing *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015), she argues she is merely a tenant on the property and therefore cannot be held liable for ADA violations in common spaces such as the parking lot. (Higareda Mot. 6–8).

*Kohler* holds that a tenant cannot be held liable for ADA violations that occur in spaces or areas that are exclusively under the control of the landlord. *Kohler*, 780 F.3d at 1266. In

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u> | **DATE:** <u>March 20, 2020</u> |

*Kohler*, where the defendant store rented one storefront of a large shopping center, but did not "own, lease, or operate" the shopping center parking lot, it could not be held liable for ADA violations that arose from the lot.  *Id.* at 1262, 1266.

But Higareda's situation is unlike that of the defendant's in *Kohler*.  Although Higareda claims that her lease for space was similarly "for the space in the building only and not for the parking area" (Higareda Mot. 6), Plaintiff points out that her lease is for the premises at "24369 Sunnymead Blvd., Moreno Valley California" in general, and it does not designate any common or private spaces for her or Blanco's exclusive use (Reply 7; *see generally* Higareda Mot., Ex. 2, Commercial Lease 1, ECF No. 89-2.)

There is, at a minimum, a factual dispute as to whether Higareda leases or operates the Salon parking spaces along with the Salon itself.  Accordingly, Plaintiff's parking space claim cannot be dismissed as a matter of law as against Higareda.

> B. <u>Genuine Dispute of Material Fact as to Parking Space Claim and Potential Mootness Defense</u>

Turning to the parking space claim, the parties do not dispute that the Salon had approximately eleven parking spaces.  As such, the Salon was required to maintain at least one van-accessible parking space in its parking lot.  Plaintiff attaches six photos of various parking spaces outside the Salon, all dated May 1, 2018, in support of his Motion.  (Plaintiff's MSJ, Ex. 4, Photographs, ECF No. 86-7.)  None of the parking spaces are marked or reserved in any way for wheelchair or other handicap accessibility.  (*See generally id.*)  Neither Blanco nor Higareda have disputed that this was the state of the parking lot at the time of Plaintiff and his investigator's visits in 2018.  As such, Plaintiff claims he is entitled to summary judgment on the parking space claim.

However, "because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA . . . a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (citing *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006)).  This may be the case here.

Blanco claims that the parking lot has since been brought into compliance with ADA parking space requirements.  (Blanco Mot. 11 ("Plaintiff has been provided with evidence that the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| CASE NO.: <u>5:18-cv-00963 SJO (KKx)</u> | DATE: <u>March 20, 2020</u> |

parking structure is marked pursuant to Code and ADA regulations."). He also attaches photographs of what appears to be a newly painted parking space with accompanying signage, which he claims "depic[t] the current state of the par[k]ing structure which is Code Compliant." (Blanco Mot., Ex. A, ECF No. 92-1.; Blanco's Statement of Uncontroverted Facts and Conclusions of Law ("Blanco SUF"), ECF No. 94, No. 2.)

Plaintiff challenges Blanco's evidence, emphasizing that Blanco "does not include any measurements regarding the length and width of the parking stall and access aisle" to demonstrate that the parking space is, in fact, compliant. (Reply 8.) Plaintiff emphasizes the ADA Standards' specific requirements for the length and width of a parking space, the required striping, the height of the signage, and more. 2010 Standards, 36 C.F.R. § 1191, App. D., § 502.1–502.3. Blanco's moving papers, declarations, and photo exhibits simply do not contain enough information to tell whether the (supposedly) new parking space is compliant with all of these requirements.

The Court's function here is not to determine the truth of this matter by conducting a "trial on affidavits" between Plaintiff's and Blanco's conflicting photographs and declarations, nor is the Court capable of determining whether the new parking space conforms to the ADA's numerous and highly specific requirements from the photographs alone. *Anderson*, 477 U.S. at 249, 255. In any case, the parking space claim may or may not be moot. The evidence, as sworn to by both parties, presents a sufficient disagreement to require submission to a jury, and it is inappropriate for resolution as a matter of law at this juncture.

As such, there is a genuine dispute of material fact, and summary judgment for either side is inappropriate. Thus, both Plaintiff's and Defendants' Motions for Summary Judgment are **DENIED** as to the parking space claim.

      C.    <u>Genuine Dispute of Material Fact as to Salon Counter Height</u>

Finally, turning to the counter height claim, Plaintiff asserts that the Salon's transaction counter "was 42 inches high." (Plaintiff's MSJ 11.) As such, the counter did not meet the ADA's requirement to have a portion of sales counter no higher than 36 inches above the floor and 36 inches in width that extended the same depth as the rest of the countertop. (*Id.* (citing 2010 Standards, 36 C.F.R. § 1191, App. D, § 904.4.1).)

On the other hand, Higareda claims that the Salon did in fact have an ADA-compliant sales counter. (Higareda Mot. 8.) Here, she insists that when she first opened the Salon in 2010, she purchased and installed an ADA-compliant counter in the Salon in order to pass the City of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>5:18-cv-00963 SJO (KKx)</u> | **DATE:** <u>March 20, 2020</u> |

Moreno Valley's safety and occupational-use inspection, and the counter has still been in use since that time.  (*Id.* 9.)  She also claims that after Plaintiff filed his lawsuit, she retained a third-party consultant, Building Principles, to perform a Certified Access Specialists ("CASp") evaluation of her business.  (*Id.*)  Building Principles apparently found that the Salon was fully in compliance with all federal and state accessibility standards.  (*Id.*)

Plaintiff and Higareda have attached competing factual declarations, photographs, and exhibits to support their positions.  First, Plaintiff attaches an affidavit and set of photos from his investigator, Evens Louis, who visited the Salon on May 1, 2018.  (Decl. of Evens Louis in Supp. of Plaintiff's MSJ ("Louis Decl."), ECF No. 86-6, ¶¶ 1–3.)

Louis affirms that when he visited the Store, he measured the height of the transaction counter to be "approximately 42 inches high."  (Louis Decl. ¶ 4.)  He also includes two photographs of the interior of the Salon in support.  (Louis Decl., Ex. 4, 6–7, ECF No. 87-7.)  However, when considered in favor of Defendants as the nonmoving parties, these photographs do not constitute dispositive evidence of the issue.  Both photographs show less than half of a store counter, and there is no way to tell where the counter stands in relation to the rest of the Salon or how high it is (36" or 42" from floor level).  Both photographs also appear to have been taken from the same side of the room, so it is impossible to tell whether there is (or is not) a second, lowered counter within the Salon.

In any case, Higareda attaches a copy of the Building Principles CASp inspection report, dated July 5, 2018, which includes a finding that "[t]he service counter is 34" high to the top, and more than 36" wide" above a picture of a white desk that appears to be in use as a sales counter inside the Salon.  (Higareda Mot., Ex. 4, Site Accessibility Evaluation ("CASp Report"), ECF No. 89-4, 5.)  Higareda also provides her own declaration, in which she affirms that back in 2011, she purchased an ADA-compliant service counter that was 34" high and 36" long and placed it at a 90-degree angle from the existing sales counter in order to comply with occupancy regulations for the City of Moreno Valley.  (Decl. of Maria Carmen Higareda in Supp. of Opp'n to Plaintiff's MSJ ("Higareda Decl."), ¶¶ 4–8, ECF No. 89-5.)  She also claims that counter has been in place ever since.  (*Id.* ¶ 8.)  Finally, Higareda attaches a declaration of Joana Aracelie Garcia ("Garcia"), one of her employees, in which Garcia attests that "there [is] a counter at a 90-degree angle to the main counter [that is] shorter than the main counter and is there for ADA compliance."  (Decl. of Joana Aracelie Garcia in Supp. of Opp'n to Plaintiff's MSJ, ¶¶ 3–4, ECF No. 89-6.)

To prevail on his counter height claim, Plaintiff has to show he was denied a public accommodation by the Defendants due to his disability.  But if the Salon had a lowered, ADA-

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| CASE NO.:   <u>5:18-cv-00963 SJO (KKx)</u> | DATE:  <u>March 20, 2020</u> |

compliant service counter, then there was no such denial, because Defendants would have met their obligation to provide at least "one of each type of sales counter and service counter" at an appropriate height.  2010 Standards, § 227.3.  Therefore, the factual dispute about the counter(s) in the Salon—whether there was only one high sales counter, or whether there was an additional, shorter, ADA-compliant counter—is material to Plaintiff's counter height claim.

The Court's function here is not to determine the truth of this matter by conducting a "trial on affidavits" between the photographs, inspection reports, or conflicting declarations from Louis, Higareda, and Garcia.  *Anderson*, 477 U.S. at 249, 255.  The evidence, as sworn to by both parties, presents a sufficient disagreement to require submission to a jury, and it is inappropriate for resolution as a matter of law at this juncture.

As such, there is a genuine dispute of material fact, and summary judgment for either side is inappropriate.  Thus, both Plaintiff's and Defendants' Motions for Summary Judgment are **DENIED** as to the counter height claim.

IV.    <u>UNRUH CIVIL RIGHTS ACT CLAIM</u>

A violation of an individual's rights under the federal ADA also constitutes a violation of the California Unruh Civil Rights Act ("Unruh Act").  Cal. Civ. Code § 51(f).

Plaintiff's Unruh Act claim does not contain any new factual allegations, making it derivative of the ADA claim.  Because none of the parties are entitled to summary judgment on the ADA claim, all parties' motions for summary judgment on the Unruh Act are similarly **DENIED**.

V.    <u>RULING</u>

For the reasons stated above, no party is entitled to summary judgment on either the two ADA claims or the Unruh Act claim because there exist genuine disputes of material fact.  The Court finds that upon review of the evidence, as presented in the parties' exhibits, declarations, and other statements in support, a reasonable jury could determine "**either** that the plaintiff proved his case . . . **or** that he did not."  *Anderson*, 477 U.S. at 254 (emphasis in original).  As such, the Court **DENIES** Plaintiff's Motion for Summary Judgment in its entirety, **DENIES** Defendant Manuel Blanco's Cross-Motion for Summary Judgment in its entirety, and **DENIES** Defendant Maria Higareda's Cross-Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.